Rodriguez v. United States. Good morning, Your Honors. May it please the Court, my name is Malvina Nathanson. I represent Cleopatra Rodriguez. I think the primary issue in this case is whether or not in the conviction that led to this quorum nobis motion. And I think that answer is easy. Yes, she was. She had an attorney who didn't seem to have any idea about what her citizenship status was, and there's no indication that he made any attempt in his – well, there's no indication that he had any negotiations, much less attempted in negotiations. There was no argument here or attempt to withdraw her plea, correct? That's correct. I mean, it was going to be – there was going to be a plea of guilty. There was going to be a plea of guilty. If the Court – But now you're arguing, as I understand it, is somehow the allocution would have been different, had she known what you say she should have known. I'm saying the allocution could have been different if the attorney had made some attempt to negotiate a plea to a charge that would not involve – It seems to me that your idea that the government would negotiate a different plea, I don't see the basis for your suggesting that, how you can – that seems speculative to me. Well, it's – speculative is maybe – I wouldn't want to say that. I might concede a little hypothetical. There's nothing in the record because it never happened. I mean, there was no – Why would the government – you're saying that the government would have somehow – the government knew everything here, but would – somehow she would have been allowed to leave out all of the activity that happened prior to her arrest because this is all – that was the question that was asked. It was the dates that were significant. It was, you know, whatever happened prior to the statements that she made in the naturalization application. But we're looking at a woman who had an extremely sympathetic situation. She had – So is the relief that you're asking for essentially a remand so that there could be a hearing to inquire into what might have happened or what would have happened had a different proposal been made by the defense? Yes. That's in effect – although I would add, Your Honors, that I think it clear from everything about this case and from her statements that her – Ms. Rodriguez's primary objective was to remain in this country so that she could support her two sick children and her sick parents. Well, her primary objective was to be able to continue to support her children and her family. That's clear. Yes. Okay. But that involved also staying out of jail or staying out of jail for as much as she could possibly – That's true. And that's why this was, from what she could see, without understanding that there might be deportation consequences, a favorable plea. But had she – But what would be the proposal – I'm trying to understand what the plea proposal is that would have been – should have been put to the government that the government might have agreed to. Are you suggesting – the only things I can think of are either – because it's not a question of the offense. She's already pleading guilty to a stripped-down offense, right? Yes. So the only thing it could be has to do with the allocution. Are you proposing that the defense should have tried to ask the government to accept a different kind of allocution, or that maybe what a clever defense lawyer would have done is just have her allocute that she did certain things without specifying when she did them, and that might have slipped by without the government paying it – Well, no, Judge, I don't think anything should have slipped by. And we specifically, yes, explicitly said in the brief that's one of the possibilities, that there need not have been a time period specified. I can't – But the government should have been asked explicitly, look, here's the thing. She doesn't want to be denaturalized. So she's perfectly prepared to admit that she rented the apartment and did whatever she did with the tax returns. But she'll just say she did it during the time period of the conspiracy without specifying the date. That is one of the possibilities. Obviously, I can't know what the government would have said. Well, I'm just trying to – what I think is at issue here is the ineffectiveness of defense counsel. So the question is, what would be the strategy that a proper defense would have followed? And then the next question is going to be, and would the government have left that off or not? And if I were the defense lawyer, I would like to think, knowing that she was a naturalized citizen and knowing the specifics of the naturalization situation, I would like to think that that's exactly what I would have tried to have done. The government would have been asked to, in effect, obscure the dates in which she did this in order to save her citizenship as part of a plea that she is guilty of this conduct, serious conduct. And that's where it seems to stretch to me. I'll accept the word obscure, Judge, but I don't think it has such a sinister meaning. I think that it would have – I don't see the necessity in the plea for being all that would have covered the bases. The district court ruled before the Supreme Court's decision last June in Lee. In Lee? Yeah. Does Lee make any difference? Lee was decided in June of 2017, so that, yes. And I think that Lee, which is a strict Padilla case, but in Lee, the court placed a great deal of emphasis on the fact that the thing about Lee is that that was an option, a possibility of going to trial. And what I was hoping to get to was the idea that if the plea could not have been negotiated, then she might very well have gone to trial because otherwise she was dead in the water. And Lee makes very clear that a defendant who wants to take the foolish risk of going to trial is still better off than a guaranteed deportation. So I would think that that might also play into it. Is there anything in the record to suggest that she would have gone to trial? Because, Your Honor, there isn't because at that point there was no reason for those considerations to enter anybody's mind. The Supreme Court says that it can be ineffective assistance and that there is prejudice if either the defendant would have gone to trial or the defendant could have secured a better plea. There are alternatives, right? That's right. And you're not suggesting that there is any basis here for thinking that she would have gone to trial in the face of the evidence in the case or that she cared so much about deportation consequences that she would have marched into the valley of death and hoped for jury nullification. You are saying she could have gotten a better deal. I'm saying that that would be the first push. I happen to have a client right now in a completely different case who did, in fact, march into the valley of death. Some people do that. But hopefully that would not have been necessary. And I'm happy to fill in a rebuttal. Can I ask one more question about what the consequences of all this were? Suppose the government had agreed to a proposal that she would plead guilty without specifying the time frame. Her advantage in the denaturalization proceedings then would be, compared to now, that the government could not use her own admission against her. But the government would still have whatever evidence the prosecutors had in this case and they would have no longer a beyond a reasonable doubt standard to prove that she had done these things in the relevant time period before her denaturalization proceeding. They would not be limited. Judge, that's the secondary, what I think is the secondary question, which is the adverse consequences. Again, if I were in her position, I would much rather go into denaturalization without my own admission. At least it makes, who knows what the government might do. We'd all rather, right? But I think those are adverse consequences. But I thank you for the extra time and I will wait for rebuttal if there's anything else I need to say, unless there are more questions at this point. Thank you. We'll hear from the government. May it please the court, my name is Andrew Beatty. I'm an assistant United States attorney in the Southern District of New York. I represent the government in this appeal and represented the government in the petition in the district court below. Does Lee change the standard somewhat? It does not, your honor. It's not different from what we had said in Kovacs? Kovacs already takes a, already embraces a case by case examination that the Supreme Court demands in Lee. And this is also a different case from Lee because it does not involve direct, deportation is the direct result of a conviction and therefore is a different analysis in terms of the remedy, as well as the prejudice under Lee. In effect, as I gather what your adversary is saying, is that the government somehow would have agreed to a truncated allocution that would not specify the dates so that she could then conveniently lie to the naturalization authorities about her having a prior record, prior committing these crimes. Your honor, that's my understanding as well. And there's no basis in the record to conclude that there's a reasonable probability that she could have negotiated such a plea and that the government In Kovacs, the facts were that the government deliberately negotiated a plea in order to spare the defendant an adverse immigration consequence. I mean, that's why Kovacs won because the government already had done that in that case. But doesn't that stand as some evidence that the government is willing to negotiate pleas that get what is needed in the criminal process but do not have adverse immigration consequences? I can't speak to precisely what conversations happened in Kovacs, but in here Well, we know what happened in Kovacs because that's the premise of the decision, is that the government had accepted a misprision of felony plea precisely because it, like the defense attorney, operated under the misapprehension that that would avoid immigration consequences when it was clear that the facts would have supported a substantive criminal count that would have led to mandatory deportation. That's how we know the factual situation in Kovacs. This case, however, is different from Kovacs because the factual, there's no factual basis for a plea or condom. Was there any discussion in the plea negotiations about whether the government would seek to denaturalize her? There's no indication of that in the record, Your Honor. Is that something that competent defense counsel should have raised? There was no, the denaturalization proceedings weren't initiated until some years later. Should competent defense counsel have raised the question of whether the government would agree not to seek to denaturalize her as part of this global plea, as in Kovacs? There's no reason for the defense counsel here to have raised that because Ms. Rodriguez didn't tell her defense lawyer, as far as the record indicates, that she lied on her naturalization application. The defense lawyer had— Can you figure that out from the fact that she was now pleading guilty to having committed a crime within a few years before her naturalization? I mean, why would it be on her to tell that to a defense lawyer? I would think a layperson would be not aware of the significance of that as something to discuss. I mean, I'm sympathetic to the defense lawyer here. I myself didn't know much about denaturalization until the Supreme Court's decision a year or so ago brought that, in that case from Bosnia, brought that vividly home. But still, that may just mean that I might have been an incompetent defense lawyer if I had been faced with this kind of case. It's common ground here, is it not, that an effective defense lawyer would have understood the denaturalization consequences. I thought the government conceded that. Yes. Okay. Taking a step back to look at the big picture— What I'm just wondering is, as a district judge, I presided over any number of pleas in which the elocution seemed carefully crafted by the defense to admit the minimum necessary to have a valid guilty plea, when the government plainly believed, and would later say at sentencing, that the defendant had done much more than the minimum amount that was in the elocution. So I'm wondering why we should think that the government would have said, no, by God, Ms. Rodriguez has to say that she did this thing in 2016 or 2017. But in addition to that, the only facts that there are in the indictment, in the record, and in the elocution are conduct of Ms. Rodriguez in early 2007. There's no factual basis for any plea at any other point in time. As Judge Preska correctly determined, there's no basis not just that the government would have accepted that, but there's no reasonable probability that the court would have accepted such a plea, which is also necessary, as you know, especially where the indictment itself lays out conduct in early 2007. Judge Preska's determination on that point is not an abuse of her discretion. Taking a bigger picture view of this, in making an equitable determination of whether the extraordinary remedy of quorum nobis is warranted, Judge Preska is entitled to look at all of these facts, including the facts that it's more or less undisputed that Ms. Rodriguez did in fact lie in her naturalization application. Judge Preska determined that the extraordinary remedy, this equitable remedy, was not warranted, and that determination is not an abuse of her discretion. Unless the Court has any further questions, I'll rest on my brief. Thank you. I just want to note that in the affidavit in support of the quorum nobis, Ms. Rodriguez says that she did tell her lawyer what her citizenship status was, that she was a naturalized citizen. I have no idea what the lawyer was doing at the time of plea. When the judge asked if she was a citizen, she said yes. The lawyer said no. At the time of sentence, the lawyer says yes. And the poor client winds up saying no also after the judge has agreed that she's not a citizen. Right. And then when the judge says . . . Was there ever an explanation for that? I mean, did the lawyer . . . I can answer that, but not from the record. The lawyer hasn't said anything. Clearly, nobody was discussing possible immigration consequences of what she was doing, and I put it to the lawyer. I also want to underline that there's no question that Ms. Rodriguez has a very difficult task perhaps of convincing this Court that there's a reasonable probability of a different plea, but that's only because of the lawyer's . . . the fact that nothing . . . if the lawyer had tried to negotiate a better plea or something, we might know how the government would have responded. I'm trying to envision the hearing at a remand. We know the facts that are before us, and then someone from the government, the prosecutor on the case, comes in and says, I would never. And then the question is, the judge has to decide whether that's credible, or alternatively I suppose it's possible that the prosecutor on the case might say, well, I didn't care about the denaturalization stuff, and I would have allowed a plea where she just said, yes, I acknowledge that at various times I did transfer, possess, and use means of identification of another. At some unspecified time within the time frame of the indictment, I did possess and use without lawful authority a means of identification of another person. And that's all speculative, too. That's what she would . . . I mean, that's the best I could do for an allocution that would get her this plea, and have a valid plea, and not specify that anything occurred before 2008. Sounds good to me. Let me follow up with one thing. You asked to have the conviction vacated, correct? Yes. And then have a new plea. Yes. How does that unring the bell, in terms of what's already been said, in terms of the ability of her to . . . so she goes in and she pleads that way, and maybe it's even a question of, did she lie before the immigration authorities? And there's a statement on the record to that effect. Is there some basis for eradicating that statement? And that gets to whether Judge Preska was reasonable in ruling that there were no adverse consequences. She focused on the vacating of a conviction. But we've also asked to vacate the plea. And under . . . and I do not remember that section, but it's cited in the brief. When you vacate a plea, you vacate what was said. I mean, the whole thing no longer exists. What was said is not admissible against the defendant in a later proceeding. That's correct. Presumably, that mainly refers to the criminal case, but it doesn't . . . It's not specific at all. It's not clear that you would be able to do that in a separate immigration proceeding, correct? I'm not sure . . . No, that you would necessarily be able to get past the hurdle that you have of the situation where she's admitted to the offense. I think the federal rules would apply. I see no reason why they would not apply in the immigration proceeding. Certainly, as Judge Lynch pointed out earlier, the government would still be in a position to offer its independent proof, and there's not much that I can do about that. But in terms of relying on admission, and I know that the complaint that was filed in the denaturalization proceeding does indeed specifically rely on the plea and conviction. So, they might have to file a whole new complaint, and it may be she's Her situation is such that a good attorney might well persuade the government that she is not the kind of person who needs to be sent out of the country. We don't know any of this, but I think that the opportunity for Ms. Rodriguez to try to achieve a favorable result, she's entitled to it under this record and under the law. Thank you. Thank you very much. We'll reserve decision.